Filed 7/25/16  P. v. Bowman CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE, | C078851 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF141477) |
| v. | |
| FRANK BERNARDI BOWMAN, | |
| Defendant and Appellant. | |

Defendant Frank Bernardi Bowman went to the duplex of some friends where he pointed a gun at two of the women inside (Jennifer Evans and Anita Kelley), verbally threatened Kelley, and then right after he left and went outside, fired a gun at the hood of Kelley's truck.

For these acts, a jury found defendant guilty of first degree burglary (count 1), criminal threats to Kelley (count 2), assault with a firearm on Evans (count 4), assault with a firearm on Kelley (count 6), possession of a firearm by a narcotics addict (count 7), grossly negligent discharge of a firearm (count 8), and misdemeanor drawing or

1

exhibiting a firearm (count 9). The jury also found that defendant had two prior strike convictions.

The court sentenced defendant to 177 years to life in prison, which included the following terms: five consecutive terms of 25 years to life in prison for the current strikes (first degree burglary, criminal threats, two assault with firearms, grossly negligent discharge of a firearm), and 50 years for the prior serious felonies, calculated as two five-year terms attached to each current strike that the People had alleged as prior strikes.

On appeal, defendant raises evidentiary and sentencing issues. We find merit only in the sentencing issues. As we will explain, the sentence must be vacated and the case remanded for the trial court to: (1) strike the prior serious felony enhancements that the People specifically elected not to charge; (2) impose a stay on one of the four terms of punishment associated with the burglary or the crimes against Kelley (there were two) or Evans because defendant entered the duplex with the intent to commit these crimes; and (3) exercise its discretion to sentence the current five-strike offenses either consecutively or concurrently, where the record shows that the court misunderstood its sentencing discretion.

FACTUAL AND PROCEDURAL BACKGROUND

The crimes here took place around 10 p.m. in June 2014 in a residential area of Yuba City at the duplex of Rhonda Mercado, her 12- or 13-year-old son, and her boyfriend Sergio Beltran. At that time, Mercado's friends, Evans and Kelley, were visiting.[1] Evans and Kelley had gone into the back room and smoked methamphetamine. Beltran went outside to smoke a cigarette when defendant drove up to the duplex, said "hi," and went inside. Defendant peeked his head into the back room, said, "ooh," upon

---

[1]    Evans testified at trial she had previously been convicted of petty theft and misdemeanor carrying a concealed firearm in a vehicle.

2

seeing Evans and Kelley, and then walked out of the duplex. He returned to the back room 30 to 45 seconds later with a sawed-off shotgun and pointed it at the middle of Evans's forehead. When Evans asked defendant, " 'Frankie, what are you doing,' " he hit her on the side of her face with the shotgun. Then he turned to Kelley and pointed the shotgun at Kelley's head. He told Kelley, " 'Stop following me and stay away from Wilbur.' "

Defendant walked out of the back room, apologized to Mercado and her son, and left the duplex. Immediately after leaving, defendant fired his shotgun into the hood of Kelley's truck, causing a hole in the radiator. The sawed-off shotgun defendant fired had buckshot inside. A sawed-off shotgun, because it has a shorter barrel, causes the buckshot pellets to disperse faster when leaving the barrel. A buckshot shell produces bigger holes.

DISCUSSION

I

*There Was Sufficient Evidence Defendant*

*Discharged A Firearm In A Grossly Negligent Manner*

Defendant contends there was insufficient evidence he "willfully discharge[d] a firearm in a grossly negligent manner which could result in injury or death to a person" (Pen. Code, § 246.3, subd. (a)), because there was no evidence of risk of injury to anybody. The "bottom line," he argues, is "that without some testimony that pellets to a truck had any ability to hit someone," there was insufficient evidence to support this conviction.

But there was such evidence. Defendant fired a sawed-off shotgun in a residential neighborhood immediately after he left Mercado's duplex. At least five people were around and heard the shot, which occurred in June at 10 p.m. Shooting a firearm in an area where people are close by presents a high risk of injury or death. (See *People v. Alonzo* (1993) 13 Cal.App.4th 535, 537-538, 540 ([shooting a gun into the air at 2 a.m. in

3

a commercial business district with people present was "grossly negligent behavior [that] could have resulted in injury or death to a person"].) The fact that defendant fired into Kelley's truck does not help him. Defendant fired a sawed-off shotgun that had buckshot inside. A sawed-off shotgun, because it has a shorter barrel, causes the buckshot pellets to disperse faster when leaving the barrel. A buckshot shell produces bigger holes. All of this also ran the risk of a ricocheting pellet, fragment, or debris, hitting a person in this residential neighborhood.

II

*Defendant Has Forfeited His Contention That He Should Have*

*Been Able To Impeach Evans With Evidence That She Believed She Could*

*Receive A Benefit In A Pending Arizona Drug Case If She Cooperated In This Case*

Defendant contends the trial court violated his due process right to present a defense and abused its discretion when it excluded evidence that Evans had been arrested in Arizona in September 2014 for attempting to smuggle 230.3 grams of methamphetamine into the United States from Mexico, because this evidence was relevant to prove that "she did believe she could receive a benefit based on her cooperation with the prosecution." As we explain below, defendant has forfeited this contention because he never asked that the evidence of Evans's drug arrest be admitted *for the specific purpose* he asserts now on appeal.

In an in limine motion, the People moved that evidence of Evans's arrest be excluded because it was not relevant, as she had not been convicted of those charges yet. The court tentatively ruled that defense counsel would be able to impeach Evans only if there had been a conviction or if she had received "any promise of leniency." Defense counsel did not object to this ruling. The court then held a hearing out of the jury's presence to ascertain the facts behind Evans's arrest. Evans testified nobody in the offices of the Yuma County District Attorney (in Arizona) or the Sutter County District Attorney had promised her leniency for her testimony here. Her drug charges were still

4

pending in Yuma County, and she had not yet been convicted of anything. When asked whether the way she felt was "you wish you would be made an offer," Evans responded, "from Arizona, for that case, I mean, I wish they would look at it like I'm cooperating here and so therefore I'm not a bad person, you know." The court excluded evidence of her drug arrest, since neither Yuma County nor Sutter County had promised her leniency for her current testimony nor had she been convicted of any crime in Arizona.

Defendant contends this evidence should have been admitted because Evans "did believe she could receive a benefit based on her cooperation with the prosecution." The problem for defendant is that at no time did he raise the argument that Evans's belief that she thought she could receive a benefit in her Arizona case from her testimony here was relevant evidence in this trial that should be admitted. The court was therefore not on notice that defendant was seeking admission of that specific evidence. In fact, the court had specifically stated the purpose of the hearing was to ascertain whether Evans had been convicted of the Arizona crimes or if she had received a promise of leniency and that if neither of those things were true, evidence of her Arizona case would be excluded. The trial court had no reason to believe that defendant was seeking admission of this evidence if Evans simply believed she might receive a benefit, regardless of the lack of promise by any prosecuting agency. Thus, defendant has forfeited this specific contention on appeal by failing to raise it in the trial court. (*In re Seaton* (2004) 34 Cal.4th 193, 198.)

### III

*This Case Must Be Remanded To Correct Three Sentencing Errors*

Defendant raises three sentencing errors the trial court committed that he claims require remand for resentencing. These errors are: (1) the trial court imposed an unauthorized sentence of an additional 50 years in prison (two five-year prior serious felony enhancements attached to each current serious felony conviction, of which there were five) because the People never alleged or sought at any point the five-year prior

serious felony enhancements; (2) the trial court should have stayed some of defendant's punishment; and (3) the trial court misunderstood its discretion to sentence the strike counts concurrently. We take each in turn, finding merit in these contentions.

## A

*The Two Five-Year Prior Serious Felony Enhancements*
*Attached To Each Current Serious Felony Conviction (Which*
*Amounts To 50 Years) Must Be Stricken Because The People*
*Never Alleged These Priors Or Sought To Have Them Imposed*

In the information, the People alleged under "Penal Code Section 667{e}{2}{A}/1170.12{c}{2}{A}"[2] that defendant had two prior convictions for a serious felony, namely, a June 2004 conviction for grossly negligent discharge of a firearm and a July 2007 conviction for first degree burglary. In a verdict form labeled "prior strike convictions," the jury found defendant had the two prior convictions. The People used the prior serious felony convictions in their sentencing brief in the strikes context to either double defendant's terms or impose 25-year-to-life terms for the current serious felonies, of which there were five. The probation report also used the prior serious felony findings only in the strike context to recommend the same.

At sentencing, in addition to using the prior serious felony convictions as strike priors to either double the term for the count or impose 25-year-to-life terms, the court imposed additional terms (two five-year terms) on each of the five current serious felonies (count 1 for first degree burglary, count 2 for criminal threats to Kelley, count 4 for assault with a firearm on Evans, count 6 for assault with a firearm on Kelley, and count 8 for grossly negligent discharge of a firearm). Defense counsel objected to the

---

[2] These provisions comprise the strikes law mandating (as applicable here) either doubling of defendant's term for the applicable crime or imprisoning him for 25 years to life for the applicable crime. (Pen. Code, §§ 667 subd. (e)(2)(A), 1170.12, subd. (c)(2)(A).)

6

imposition of the serious felony enhancements because they were not pled and proved at trial. We agree that since the People never sought to charge these priors as five-year serious felony enhancements, they must be stricken.

The court imposed additional punishment that was never sought at any time by the People. However, it is the People who retain the discretion to file criminal charges, including enhancements, which includes the choice of whether to maximize the available sentencing to which a defendant might be exposed. (*People v. Gonzales* (2001) 87 Cal.App.4th 1, 15.) "An individual exercise of prosecutorial discretion is presumed to be ' "legitimately founded on the complex considerations necessary for the effective and efficient administration of law enforcement. . . ." ' " (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 451.) The information and the People's sentencing brief make clear that the People were never seeking an additional 50 years tacked onto defendant's sentence for the two prior felony convictions that they alleged only as strike priors. Nevertheless, the court sua sponte imposed them not only as strikes but also as serious felony enhancements. The court therefore erred in imposing this additional punishment never charged nor sought by the People.

B

*One Of Defendant's Sentences Should Be Stayed*

Penal Code section 654 precludes multiple punishment for a single act or indivisible course of conduct punishable under more than one statute. Defendant contends the court should have stayed, pursuant to Penal Code section 654, either the consecutive sentence for burglary in count 1 or one of the crimes against Kelley (so, either criminal threats against Kelley in count 2 or assault with a firearm for pointing a gun at Kelley in count 6) and also one of the two crimes against Kelley because they had the same purpose. Defendant is correct to a point -- the court should have stayed one of the four terms of punishment associated with the burglary or the crimes against Kelley (there were two) or Evans. But the court was correct in punishing defendant for both the

7

criminal threat against Kelley in count 2 and pointing the gun at Kelley in count 6. We explain below.

The prosecutor argued in closing that the burglary occurred when defendant entered the duplex to commit assault with a firearm against Evans and Kelley or the criminal threat against Kelley. "Burglary consists of entry into a house or other specified structure with the intent to commit a felony. (Pen. Code, § 459.) Thus, ordinarily, if the defendant commits both burglary and the underlying intended felony, Penal Code section 654 will permit punishment for one or the other but not for both." (*People v. Centers* (1999) 73 Cal.App.4th 84, 98.) Following this logic, one of defendant's terms imposed on counts 1, 2, 4, or 6 must be stayed.

But the court was correct in punishing defendant for both the criminal threat against Kelley in count 2 and pointing the gun at Kelley in count 6 because these acts had separate objectives. Defendant committed the assault with a firearm when he pointed the gun at her head. His objective could reasonably be perceived to be harming or killing her. Separately, but near in time (here, right after pointing the gun at her), defendant said, " 'Stop following me and stay away from Wilbur.' " With this criminal threat, his objective could reasonably be perceived to be instilling fear in Kelley so she would not follow him and would leave Wilbur alone. As such, defendant did not simply commit the criminal threat to bolster the assault.

## C

### *The Court Erred In Believing It Had To Impose*
### *Five Mandatory Consecutive 25-Year-To-Life Terms*

Defendant contends (and the People concede) the court misunderstood its sentencing discretion when it erroneously believed it had to impose five consecutive 25-year-to-life sentences for the strike offenses (count 1 for first degree burglary, count 2 for criminal threats to Kelley, count 4 for assault with a firearm on Evans, count 6 for assault

8

with a firearm on Kelley, and count 8 for grossly negligent discharge of a firearm). We agree.

In the People's sentencing brief, they argued that defendant should receive a minimum of three consecutive 25-year-to-life terms, one for the burglary in count 1 that was complete when defendant entered the duplex, one for the grossly negligent discharge of a firearm outside the duplex, and at least one for counts 2, 4, and 6 (count 2 for criminal threats to Kelley, count 4 for assault with a firearm on Evans, or count 6 for assault with a firearm on Kelley), conceding those three crimes were committed on the same occasion and arose from the same set of facts. The People cited *People v. Deloza* (1998) 18 Cal.4th 585 for the proposition that the court has the discretion in a strikes case to decide whether to sentence defendant to consecutive or concurrent sentences if the crimes were committed on separate occasions or arose from a different set of facts.

The trial court, at the sentencing hearing, heard defendant's argument for concurrent sentences, but then it stated that "multiple crimes sentenced as third strikes must be consecutively sentenced whether or not the crimes occurred on the same occasion or on the same operative facts."

The trial court was wrong. When a defendant is sentenced on multiple felony counts under the strikes law, the trial court must impose consecutive sentences unless the current offense were committed "on the same occasion" or arose "from the same set of operative facts." (Pen. Code, § 667, subd. (c)(6) & (7).) In *Deloza*, where the trial court stated that it must sentence defendant consecutively under the strikes law because "it would be unlawful for me to proceed in any other fashion," the California Supreme Court held, "the trial court misunderstood the scope of its discretion to impose concurrent sentences for defendant's current convictions, and erroneously believed consecutive sentences were mandatory. Therefore, the case is remanded to the trial court for resentencing." (*People v. Deloza*, *supra*, 18 Cal.4th at p. 600.) The same is true here.

9

## DISPOSITION

Defendant's sentence is vacated and the case is remanded for resentencing. On remand, the trial court shall: (1) strike 50 years for the 10 prior serious felony conviction enhancements that were never alleged by the People; (2) exercise its discretion to sentence defendant consecutively or concurrently on the strike offenses (count 1 for first degree burglary, count 2 for criminal threats to Kelley, count 4 for assault with a firearm on Evans, count 6 for assault with a firearm on Kelley, and count 8 for grossly negligent discharge of a firearm); and (3) stay the punishment on either count 1 for first degree burglary, count 2 for criminal threats to Kelley, count 4 for assault with a firearm on Evans, or count 6 for assault with a firearm on Kelley.

/s/
Robie, J.

We concur:

/s/
Nicholson, Acting P. J.

/s/
Hoch, J.

10